IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SILVIA A. WIMBLEY,              :

    Plaintiff,                  :

vs.                             :
                                                CIVIL ACTION 04-0236-M
JO ANNE B. BARNHART,            :
Commissioner of
Social Security,                :

    Defendant.                  :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (*SSI*).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18).  Oral argument was waived in this action (Doc. 20).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health

and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

Plaintiff was born January 29, 1970. At the time of the administrative hearing, Wimbley was thirty-one years old, had completed an associates degree (Tr. 314) and had previous work experience as a grocery bagger, a poultry processor, box folder, and short order cook (Tr. 335). In claiming benefits, Plaintiff alleges disability due to schizophrenia (Doc. 10 Fact Sheet).

Wimbley filed protective applications for disability benefits and SSI on March 7, 2001 (Tr. 60-62, 281-84). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Plaintiff was capable of performing her past relevant work as a poultry processor and box folder (Tr. 13-26). Plaintiff requested review of the hearing decision (Tr. 12) by the Appeals Council, but it was

denied (Tr. 5-8).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Wimbley alleges that:  (1) The ALJ disregarded the opinions and conclusions of her treating physician; (2) she has met the requirements of Listing 12.03; and (3) she cannot return to her past relevant work (Doc. 10).  Defendant has responded to—and denies—these claims (Doc. 13).

Plaintiff's first claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's physicians.  Wimbley specifically refers to her psychiatrist, Dr. Georgie K. Stanford, Jr.  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527 (2004).

Records from Mobile Mental Health, dated January 19,

---

[1] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2000,[2] show that Wimbley had suffered a psychotic episode, with auditory hallucinations, during the previous week; Dr. C. E. Smith increased her dosage of Risperdal[3] to four milligrams a day (Tr. 223; *see generally* Tr. 208-223).  A week later, Plaintiff had started back to work and was told to reduce her medication to three milligrams daily (Tr. 222).  On February 18, Wimbley was seen by Dr. Georgie K. Stanford, Jr. who found her to have a guarded affect, euthymic, poor judgment, paranoid with circular reasoning, and only marginally stable (Tr. 219); a note from March 3 was essentially the same (Tr. 217).[4]  On March 21, Wimbley denied any hallucinations or delusions (Tr. 214).  Over the next several months, Plaintiff continued to deny any hallucinations and discussed goals and plans that she had made for herself (Tr. 208-13).

Psychologist Nina E. Tocci examined Wimbley on June 5,

---

[2]February 15, 2000 is the date on which Wimbley claims that her disability began (Doc. 10 Fact Sheet).  The Court will start its medical summary a month earlier, on January 19, 2000; the Court has, nevertheless, reviewed the other records which pre-date the asserted onset date (Tr. 148-92) though they will not be summarized herein.

[3]*Risperdal* "is indicated for the management of the manifestations of psychotic disorders" and prescribed in doses of one-through-four milligrams.  *Physician's Desk Reference* 1309-10 (52nd ed. 1998).

[4]Defendant has suggested that the notes indicate that Dr. Stanford suspected that Wimbley was questionably compliant with her medications (Doc. 13, p. 5), but the Court, frankly, has had a very difficult time interpreting the doctor's notes.

4

2000 and found that "she was oriented to all spheres and demonstrated normal attention and concentration;" her memory was intact (Tr. 194; *see generally* Tr. 193-96).  Results from the Rotter Incomplete Sentences Blank indicated "that her interpersonal skills are lacking and that she has a difficult time interpreting social situations and the motives of others;" her suspiciousness of others "interferes with her ability to relate in a meaningful manner" (Tr. 195).  The Rotter test revealed issues, but not that she was maladjusted.  Wimbley also took the WAIS-III and scored a verbal IQ of 74, a performance IQ of 69, and a full scale IQ of 69; these results placed her in the mentally retarded range.  Tocci surmised, however, that Plaintiff's actual abilities might be much higher as her thought disorder skewed her perception of reality and altered the way that she dealt with people and circumstances.  Results from the WRAT3 revealed average reading ability, above-average spelling, and below-average math performance.  The Psychologist found that all of these test results, which she considered to be valid, indicated that Plaintiff was "experiencing difficulty in her interpersonal relationships and her ability to function in social settings;" Wimbley needed "to learn social skills, self-confidence, and reality testing" (Tr. 195-96).  Though Plaintiff had basic

skills, a support system was of utmost importance as "[a]ny amount of stress [would] create anxiety and frustration and could result in relapse;" she needed constant monitoring and feedback to ensure her success (Tr. 196).

On June 12, 2000, Perry S. Tan, a counselor with Mobile Mental Health, noted that Wimbley still denied hallucinations or delusional thought and asserted medication compliance; she did complain, however, of being less alert and "slowed down" and suggested that a reduction in medication may be in order (Tr. 207; *see generally* Tr. 197-207).  These same results and thoughts were recorded over the next six months in addition to Plaintiff's setting academic and employment goals for herself (Tr. 197-206).

On January 9, 2001, Counselor Tan noted that Wimbley's thoughts and perceptions were logical and coherent, her affect appropriate, her memory unimpaired, and that she was oriented; Plaintiff stated that she was stable on her medical regimen and was suffering no hallucinations or delusions (Tr. 235). On February 23, Dr. Stanford, essentially, reached the same conclusions and continued her medication (Tr. 231).  A treatment plan by Tan and Dr. Stanford, dated June 15, 2001, indicates that Plaintiff had a Global Assessment of Functioning (hereinafter *GAF*) level of 75 (Tr. 259).  On the

GAF scale, scores between 71 and 80 indicate that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (*e.g.*, difficulty concentrating after family argument) [but cause] no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)."[5]  The Court noted no significant changes in the rest of the medical notes from Mobile Mental Health through October 2001 (Tr. 224-30, 262-64).

On November 2, 2001, Dr. Stanford completed a residual functional capacity evaluation in which he indicated that Wimbley had slight restriction of activities of daily living, moderate difficulty in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and marked episodes of decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (Tr. 255; *see generally* Tr. 255-57).  The Psychiatrist also found that Plaintiff was moderately limited in her ability to understand, carry out, and remember instructions and

---

[5]This information was found at the following website: www.dpa.state.ky.us/library/manuals/mental/Ch22.html.

moderately limited in her ability to perform simple and/or repetitive tasks; he found her only slightly limited in her ability to respond appropriately to supervision and to co-workers (Tr. 255-56).  Wimbley's diagnosis was paranoid schizophrenia which she had had since before October 2, 1997 (Tr. 256).  The Psychiatrist's prognosis was "fair for continued stability on medications [and] guarded for any great improvement" (Tr. 257).

The ALJ summarized this evidence (Tr. 20-22), but found that Dr. Stanford's "opinion was not supported by the claimant's history of treatment" and specifically stated the following:

> The ongoing treatment notes from the Mental Health Center clearly show that there has been no substantial deterioration of the claimant's impairment since October, 1997, and the record further confirms that the claimant did engage in substantial gainful activity since October, 1997.  Further, the disabling degree of severity described by Dr. Stanford is completely inconsistent with the absence of mental symptomatology noted in numerous mental status evaluation questionnaires from the Mental Health Center and is further completely inconsistent with the Global Assessment of Functioning Dr. Stanford described in June, 2001.  The medial reports from the Mental Health Center substantially refute the conclusion indicated on the questionnaire completed by Dr. Stanford and that conclusion is rejected.

(Tr. 24).  The Court agrees with the ALJ's opinion completely. Dr. Stanford's findings of extreme limitation are not supported by his own office notes.

The Court notes that Wimbley submitted additional medical evidence to the Appeals Council which was not considered by the ALJ (*see* Tr. 292-308).  It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence."  *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  However, "when the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence."  *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998), *cert. denied*, 525 U.S. 1124 (1999).

If, however, the Appeals Council accepts the case for review, we consider that new evidence as well, though it is to be examined differently from the balance of the evidence.  *See*

Falge, 150 F.3d at 1323.  *Keeton* directs this Court to look at the new evidence and determine whether it meets the three-prong standard for remanding this action.  *Keeton*, 21 F.3d at 1068.  To make a determination of remand, "the claimant must establish that:  (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level."  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In examining the action at hand, the Court notes that the Appeals Council denied review of the additional evidence (Tr. 5-8).  The Court further notes that Plaintiff is claiming that the ALJ's decision is not supported by substantial evidence and is not challenging the Appeals Council's decision to deny review of the new evidence (Doc. 10, pp. 8-10).  Therefore, this Court need not review the new evidence.  *Falge*, 150 F.3d at 1324.  The Court will limit its review of the evidence to the same evidence that the ALJ considered.[6]  With this

---

[6] Out of an abundance of caution, the Court has reviewed the new medical evidence and found, again, that the notes from Mobile County Mental Health (Tr. 293-305) do not support the extreme limitations suggested by Dr. Stanford in the residual functional capacity questionnaire (Tr. 306-08).  Because of that conclusion, the Court finds that Plaintiff has not satisfied the second prong of *Cherry* in that she has failed to show that there is a reasonable probability that the evidence would change the administrative decision.

10

determination, the Court finds no merit in Wimbley's claim that the ALJ failed to properly consider the opinions of her treating physician.

Plaintiff next claims that she has met the requirements of Listing 12.03 which states as follows:

> 12.03 *Schizophrenic, Paranoid and Other Psychotic Disorders:* Characterized by the onset of psychotic features with deterioration from a previous level of function.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
> A.  Medically documented persistence, either continuous or intermittent, of one or more of the following:
> 1.  Delusions or hallucinations; or
> 2.  Catatonic or other grossly disorganized behavior; or
> 3.  Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
> A.  Blunt affect; or
> B.  Flat affect; or
> C.  Inappropriate affect; or
> 4.  Emotional withdrawal and/or isolation;
> AND
> B. Resulting in at least two of the following:
> 1.  Marked restriction of activities of daily living; or
> 2.  Marked difficulties in maintaining social functioning; or
> 3.  Marked difficulties in

>          maintaining concentration, persistence, or
>          pace; or
>               4.   Repeated episodes of
>          decompensation, each of extended duration;
>          OR
>          C.   Medically documented history of a
>          chronic schizophrenic, paranoid, or other
>          psychotic disorder of at least 2 years'
>          duration that has caused more than a
>          minimal limitation of ability to do basic
>          work activities, with symptoms or signs
>          currently attenuated by medication or
>          psychosocial support, and one of the
>          following:
>               1.   Repeated episodes of
>          decompensation, each of extended duration;
>          or
>               2.   A residual disease process
>          that has resulted in such marginal
>          adjustment that even a minimal increase in
>          mental demands or change in the environment
>          would be predicted to cause the individual
>          to compensate; or
>               3.   Current history of 1 or more
>          years' inability to function outside a
>          highly supportive living arrangement, with
>          an indication of continued need for such an
>          arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.03 (2004).  The Court has reviewed the evidence, which is based on the conclusions of Dr. Stanford, and finds that this claim is of no merit as Dr. Stanford's conclusions are not supported by his own medical notes.

     Plaintiff's final claim is that she is not able to return to her past relevant work.  The Court notes that this claim, also, relies on the conclusions of Dr. Stanford.  When those conclusions are discounted, the evidence demonstrates no

reason that Wimbley would be unable to return to her work. This conclusion is supported by the treatment notes of Dr. Stanford and the balance of the evidence from the Mobile County Mental Health Department.  Plaintiff's claim otherwise is without merit.

In summary, Wimbley has raised three different claims in bringing this action.  All are without merit.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate order.

DONE this 4th day of May, 2005.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE